UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                           Criminal Case No. 12-20843

Donald Steven Reynolds,                Honorable Sean F. Cox

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

In this action, Defendant Donald Steven Reynolds ("Defendant") is charged with three child pornography counts. The matter is currently before the Court on Defendant's Motion to Suppress. In this motion, Defendant asks the Court to suppress statements he made to law enforcement officers on the day that they executed a search warrant at his residence. Defendant contends that he was subject to a custodial interrogation at that time and was not read his *Miranda* warnings. An evidentiary hearing was held on May 29, 2013, and the Court also heard oral argument at that time. As explained below, the Court shall deny the motion because, considering the totality of the circumstances, Defendant was not in custody for *Miranda* purposes.

**BACKGROUND**

In this action, Defendant is charged with three child pornography counts. The First Superceding Indictment, filed on March 21, 2013, charges Defendant with the following three counts: 1) "18 U.S.C. § 2252A(a)(2) – Receipt of child pornography" (Count I); "18 U.S.C. §

1

2252A – Distribution of child pornography" (Count Two); and "18 U.S.C. § 2252A(a)(5)(B) – Possession of child pornography" (Count Three). (Indictment, Docket Entry No. 8).

Defendant filed the instant Motion to Suppress on April 9, 2013. (Docket Entry No. 34). In this motion, Defendant asks the Court to suppress statements he made to law enforcement officers on May 26, 2011 – the day that Federal Bureau of Investigation ("F.B.I.") agents executed a search warrant at Defendant's home in Canton, Michigan. Defendant contends that he was subject to a custodial interrogation at that time and that he was not read his *Miranda* warnings. Defendant asks the Court to suppress any statements Defendant made to agents on May 26, 2011, including a statement made by Defendant regarding his cellular telephone number.

The Government filed a brief opposing the motion on April 30, 2013. The Government contends that the Court should deny the motion because: 1) Defendant was not "in custody" for *Miranda* purposes; and 2) assuming *arguendo* that Defendant was in custody for *Miranda* purposes, the background questions asked during the interview with the agents do not constitute "interrogation" because such questions fall within the "routine booking question" exception to the *Miranda* requirement.

With the issues so framed by the parties, this Court held an evidentiary hearing on May 29, 2013. The Government called the following individuals as witnesses at the evidentiary hearing: 1) F.B.I. Agent Ryan Blanton; 2) F.B.I. Agent Alfred Burney, Jr.; and 3) F.B.I. Agent Thomas Huse. The Defense called two witnesses at the hearing: 1) Defendant; and 2) Arica Reynolds, Defendant's adult daughter.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

Agent Ryan Blanton, Agent Alfred Burney, Jr., and Agent Thomas Huse, are experienced F.B.I. agents who participated in the execution of a search warrant at Defendant's residence on Yorktown Street in Canton, Michigan on May 26, 2011.

At approximately 6:15 a.m. on May 26, 2011, a total of eight agents, including Blanton, Burney, and Huse, arrived at the residence. When they initially arrived, the agents were wearing F.B.I. vests. The agents knocked on the front door and announced that they were F.B.I. agents and had a search warrant. At the time they arrived, Defendant and his two adult children, Andrew Reynolds and Arica Reynolds, were inside the residence.

Defendant, who had been sleeping, was awoken by the agents announcing their presence at the door and looked out the window. He saw law enforcement officers in front of his residence with F.B.I. vests on.

Defendant went downstairs to open the door and speak with the agents. Defendant was aware that his two adult children had prior criminal issues and believed that the officers were at the house because of some kind of issue with his adult children. Defendant stepped outside onto

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

the porch, along with his dog, because he wanted to learn why the agents were there. One of the agents stood outside with Defendant and gave him a copy of the search warrant. Defendant believed that the search warrant may have involved criminal activity by his adult children.

The agents then entered the residence. As they initially approached and entered the residence, the agents had guns drawn.

As Defendant stood outside of the residence, he was soon joined by Andrew and Arica, who both told Defendant they did not know why the agents were there.

When Defendant, Andrew, and Arica came back into the residence, they were directed to sit on a couch in living room. While they remained on the couch in the presence of an agent, other agents performed a security sweep of the residence.

Before speaking with Defendant, Andrew, and Arica, Agent Blanton, went back to his vehicle and removed his tactical belt, and other gear, and holstered his gun so that it was not visible. Agent Blanton spoke to Defendant, Andrew, and Arica while they were seated on the couch. He told them that the agents had a search warrant for the home, that no one was under arrest, and that they were free to leave. Agent Blanton told Defendant, Andrew, and Arica that he would be happy to talk to whoever would like to talk to him but that they did not have to talk to him.

Agent Blanton then walked around the residence in order to find a place where he could conduct interviews. He decided that an upstairs bedroom would be a good place to conduct any interviews. Agent Blanton then came back and told Defendant, Andrew, and Arica that if anyone wanted to speak with him, he would speak with them on an individual basis.

On May 26, 2011, Defendant had a painting job that he was going to return to that day.

Defendant wished to speak to the agents because he wanted to learn why the agents where executing a search warrant at his home. Because he was going to need to go to work, Defendant asked if he could be interviewed first.

Defendant walked upstairs to the bedroom where Agent Blanton and Agent Burney were. Agent Blanton introduced himself and showed Defendant his credentials.

During the interview, neither Agent Blanton nor Agent Burney had any visible weapons. Defendant was not handcuffed or otherwise physically restrained in any manner. The interview lasted for a total of ten to fifteen minutes. Defendant, and both agents, testified that the interview was cordial.

Before he started the interview with Defendant, Agent Blanton again told Defendant that he did not need to speak with the agents if he did not wish to do so. He also told Defendant that he was free to leave at any time. Defendant wished to speak with the agents because he wanted to know why the agents were at his home executing a search warrant. Defendant testified that, from the time the officers first arrived, he never stopped wanting to talk to the agents.

When Defendant indicated he wished to speak with the agents, Agent Blanton asked Defendant his name, date of birth, address, and cellular telephone number. Defendant answered those questions. In addition to telling Agent Blanton his telephone number, Defendant got up, left the room, and walked into another bedroom to get his cellular telephone. Defendant then returned to the room where the interview was taking place and showed his cellular telephone to the agents. Agent Blanton also asked Defendant other questions regarding who lived at the residence and questions regarding the computer at the residence.

Agent Blanton told Defendant that they had a search warrant because they were

investigating child pornography. Defendant told Agent Blanton that he needed to shower and go to work. The interview ended and Agent Blanton told Agent Huse that Defendant was going to take a shower so that he could get ready and leave for work.

Agent Huse then cleared the bathroom for weapons, and exited the bathroom. Agent Huse and Defendant exchanged pleasantries. Agent Huse did not question Defendant and Agent Huse did not have a visible weapon. After clearing the bathroom for weapons, Agent Huse remained in the bedroom next to bathroom for security purposes. He left the door to the bathroom ajar. Defendant showered and then left the bathroom, fully clothed. For officer security purposes, Agent Huse then escorted Defendant as he walked downstairs, and left the residence.

## ANALYSIS & CONCLUSIONS OF LAW

"The Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) that a suspect subject to custodial interrogation must first be given notice of his or her right against self-incrimination. Statements obtained during custodial interrogation in violation of *Miranda* may not be admitted for certain purposes in a criminal trial." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). "However, the obligation to administer a *Miranda* warning to a suspect only arises 'where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id*. (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

This Court must first determine whether Defendant was "in custody" for *Miranda* purposes at the time that the officers executed the search warrant at his home.

In determining "whether a defendant was 'in custody' for *Miranda purposes*," the Court

6

must look to the "totality of the circumstances" in order to determine how a reasonable man in the Defendant's position would have understood the situation. *United States v. Salvo,* 133 F.3d 943, 948 (6th Cir. 1998). "The 'ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Swanson, supra* (quoting *United States v. Knox*, 839 F.2d 285, 291 (6th Cir. 1988)).

In addition to considering whether a reasonable person in the defendant's position would feel free to leave, the Court should consider the following other factors: 1) the purpose of the questioning; 2) whether the place of questioning was hostile or coercive; 3) the length of the questioning; and 4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or acquiesced to their requests to answer some questions. *Swanson*, 341 F.3d at 529.

After considering the totality of the circumstances, this Court concludes that Defendant was not in custody for *Miranda* purposes.

**1. A Reasonable Person In Defendant's Position Would Have Felt Free To Leave After The Premises Were Secured And After Being Told That He Was Not Under Arrest, Did Not Have To Speak With The Agents, And Was Free To Leave.**

Most significantly, Defendant was explicitly told by Agent Blanton that he was not under arrest, that he was free to leave the home, and that he did not have to speak with the agents. Within the Sixth Circuit, "such a statement by a police officer is an important factor in finding that [a] suspect was not in custody." *Salvo*, 133 F.3d at 951 (citations omitted); *see also Swanson*, 341 F.3d at 530. Although Defendant's movements during the execution of the search

7

warrant were limited, those actions were taken for the safety of the officers executing the search warrant. *United States v. Jewell*, 16 Fed. App'x 295, 298 (6th Cir. 2001). Thus, a reasonable person in Defendant's position would have felt free to leave the home after the premises were secured and after being expressly told that he was not under arrest, that he did not have to speak with the agents, and that was free to leave the home.

**2.      Defendant Acquiesced To The Interview.**

Another factor to consider is whether Defendant "acquiesced to the [agents'] requests to answer some questions." *Swanson*, 341 F.3d at 529.

Here, it is undisputed that Defendant wished to speak with the agents because he wanted to know why the agents were at his home executing a search warrant. Defendant even requested that he be interviewed first. And notably, Defendant testified that, from the time the officers first arrived, he never stopped wanting to talk to the agents.

**3.      The Place, Length, And Nature Of The Questioning Was Not Coercive.**

Generally, questioning occurring in a defendant's home does not present a police-coercive environment and therefore does not rise to the kind of custodial situation that necessitates *Miranda* warnings. *United States v. Panek,* 552 F.3d 462, 467 (6th Cir. 2009); *Salvo,* 133 F.3d at 950; *United States v. Gillman*, 432 Fed. App'x 513, 516 (6th Cir. 2011). The questioning here occurred in a bedroom in Defendant's own home. During the questioning, Defendant was not hand-cuffed or physically restrained in any manner. Indeed, Defendant was allowed to leave the bedroom where the interview was taking place in to order to retrieve his cell phone from another bedroom in the home.

Moreover, Defendant himself testified that the interview with Agents Blanton and Burney

lasted only ten to fifteen minutes. The Sixth Circuit has refused to find a defendant in custody during interrogations of considerably longer periods. *Gillman, supra,* at 516 (noting the Sixth Circuit has refused to find a defendant in custody during interrogations of forty-five to ninety minutes). Defendant also testified, as did both agents involved, that the brief interview that was conducted was "cordial."

Accordingly, the place, length, and nature of the questioning was not hostile or coercive.

**5.    Defendant Was Expressly Informed At The Time Of The Interview That The Interview Was Voluntary And That He Was Free To Leave The Home.**

Another factor to consider is "other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave." *Swanson, supra*, at 529. Again, Defendant was explicitly told by Agent Blanton that he was not under arrest, that he was free to leave the home, and that he did not have to speak with the agents.

**CONCLUSION & ORDER**

Accordingly, after considering the totality of the circumstances, this Court concludes that Defendant was not in custody for *Miranda* purposes.[2]

IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

> S/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated:  June 3, 2013

---

[2]Given that conclusion, the Court need not address the Government's alternative argument that the background questions asked during the interview with the agents do not constitute "interrogation" because such questions falls within the "routine booking question" exception to the *Miranda* requirement.

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                        Criminal Case No. 12-20843

Donald Steven Reynolds,            Honorable Sean F. Cox

    Defendant.
_____/

PROOF OF SERVICE

I hereby certify that a copy of the foregoing Opinion and Order was served upon counsel of record on June 3, 2013, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager